## DELBERT HOOSER AND PERRY WOOD V. THE STATE.

No. 16575.   Delivered March 21, 1934.
Rehearing Denied June 6, 1934.

The opinion states the case.

*I. C. Counts,* of Olney, for appellants.

*Lloyd W. Davidson,* State's Attorney, of Austin for the State.

CHRISTIAN, JUDGE.—The offense is theft; the punishment, confinement in the penitentiary for two years.

Robert Hall lived on a farm 12 miles east of the town of Seymour. During the year 1933 he raised a crop of wheat, a part of which he stored in a house facing the Archer City road. In one room of this house he placed approximately four hundred bushels of wheat. He went to East Texas on August 8, 1933,

where he remained until August 27. Upon his return, he discovered that a load of wheat had been taken from the west room. The house in which the wheat was stored was about 75 yards from the Archer City road. There was another road about 125 yards west of the house. About a mile from the house there was a bridge or culvert which was in bad repair. D. V. Besser, with whom Mr. Hall lived, testified that he saw appellants in an automobile near the house in which the wheat was stored between two and three o'clock in the afternoon of August 9, 1933. He asked one of the appellants what they were doing and he replied that they were hunting rabbits. He saw no gun in the possession of either of them. They said they were out of gasoline and he told them where they might secure some. In the afternoon of August 10, 1933, Mr. Besser discovered that a load of Mr. Hall's wheat had been taken from the west room. Upon making an investigation, he found some motor truck tracks at the house. The truck had been backed against the house. The tracks showed that the truck had dual rear wheels, that is, two wheels on each side of the rear of the truck. There was green paint on the wall of the house where the body of the truck had come in contact with the wall. There was some wheat on the ground at the place where the truck had been backed up against the house. At the culvert or bridge on the Archer City road a quantity of wheat was found, and from that point the wheat had spilled out along the road for some distance, the testimony being to the effect that approximately thirty bushels of wheat had been wasted along the road. Appellant Hooser owned a Chevrolet truck with dual wheels on the rear. The body of the truck was painted green. The tracks at the granary of Mr. Hall appeared to have been made by dual rear wheels having Goodrich Silvertown tires on them and front wheels with National tires. Appellant Hooser's truck was equipped with Goodrich Silvertown and National tires. In the early morning of August 10, 1933, appellants appeared at the place of business of the Graham Mill and Elevator Company, driving a Chevrolet truck with a green bed, and offered to sell some wheat. M. E. Bailey, a witness for the State, testified that he bought approximately seventy-five bushels of wheat from them, paying them $60.26. It was 1933 wheat and classified "grade one." According to Mr. Bailey's version, appellant Hooser told him that he had raised the wheat. At this time appellant Wood was not immediately present. When Wood returned he stated to Mr. Bailey, that he had bought the wheat. Both appellants told Mr. Bailey, according to his version, that they loaded the wheat near

Seymour, and upon leaving, they struck a rough culvert about a mile and a half from where they had loaded the wheat and lost a quantity of it, and as it continued to spill, they decided to sell it. It appears from the testimony of the witness to whom they sold the wheat that the appellants had lost thirty or thirty-five bushels. His examination of the truck disclosed that the side boards had raised, which accounted for the loss. Mr. Bailey testified that appellants appeared to be "sweaty and sleepy."

Appellant Wood testified that the wheat he and appellant Hooser sold on the morning of the 10th of August had been bought from Lewis McDaniel in the winter of 1932, and placed in the granary of Wood on McDaniel's farm; that on August 9th he was moving from McDaniel's farm and employed appellant Hooser to haul the wheat for him in his truck; that after they had loaded the wheat from the granary they started to Fort Worth to sell it; that the brakes on the truck were not good and they lost a quantity of wheat, and decided to sell it at Graham; that the wheat had been loaded from the middle bin in his granary. He testified further that they loaded the wheat on a tarpaulin. He admitted that he had been in the vicinity of Mr. Hall's granary, but stated that it was a week before the wheat had been missed from the granary. Testifying for the appellants, Lewis McDaniel said that he had sold appellant Wood some wheat in 1932. On his cross-examination, he testified that on the 10th of August, after Mr. Hall had missed his wheat, he examined appellant Wood's granary and found that there was oats in the east bin and barley in the west, but nothing in the middle. He said: "It didn't show that there had been anything in it for some time, there wasn't anything in there and showed there hadn't been anything in it for a good while, and the last thing that showed to have been in there was oats. * * * That middle bin isn't sufficient to hold wheat unless it was in sacks, or repaired. When Mr. Holmes and I went out there we looked around the barn for truck tracks but we didn't see any; we looked pretty thoroughly, walked clear around the barn." Appellant Hooser corroborated appellant Wood as to hauling the wheat from Wood's granary. He admitted that he had National tires and Goodrich Silvertowns on his Chevrolet truck, but said that the National tires were behind and the Silvertowns in front. He also testified that his truck had a green body. The appellants testified that the wheat they sold was of the 1932 crop. They denied that either of them made the statement to Mr. Bailey that the wheat had been raised by one of them. Upon being recalled, Mr. Bailey testified positively that the

wheat he bought from the appellants was of the 1933 crop.

In rebuttal, the State introduced witnesses who went to the granary controlled by appellant Wood and examined the middle bin. They testified that the middle bin was in bad shape and that the last grain that had been in it was oats. Further, they testified that there were no tracks on the ground near the bin. A witness for the State testified that in the spring of 1933 he hauled some oats and barley for appellant Perry Wood and placed it in his granary on the McDaniel farm. He testified, further, that at this time there was not any other grain in the barn.

We are unable to reach the conclusion that the evidence is insufficient to support the conviction.

As shown in one of appellant's bills of exception, he objected to the testimony of a State's witness to the effect that he was in the granary of appellant Wood in the spring of 1933 and saw no grain there other than oats in the east bin and barley in the west bin. This testimony was relevant and material. Appellant Wood had testified he placed some wheat in the middle bin of his granary in the winter of 1932, and that on the 9th of August, 1933, he and appellant Hooser moved this wheat out and sold it in the town of Graham.

A careful examination of all of appellant's contentions leads us to the conclusion that error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellants seem to insist that the proof does not amount to more than a strong suspicion of their guilt. We have again reviewed the testimony and think it amply sufficient. Complaint is made that the testimony as to the ownership of the property is not sustained by the proof. We think the averment of ownership in Mr. Hall was proper, and the fact that he had gone away for a temporary visit in another part of the State, does not support appellants' complaint of a variance in regard to the ownership.

Appellants urge that we came to a wrong conclusion in regard to the identity of the wheat claimed by appellants to have been sold to them by McDaniel, which the defense claimed was

placed in a certain middle granary, and taken out by appellants and sold on the occasion here involved. This testimony has been again examined. Appellants hauled seventy-five bushels of wheat to Graham about August 10, 1933, and sold it to Mr. Bailey. Bailey testified that it was new wheat, 1933 wheat. Appellant Wood testified that the wheat they hauled to Graham was wheat he bought from Lewis McDaniel. He said they bought it from Lewis McDaniel and put it in the granary referred to, same being the middle one of three connecting granaries. He further said that he and Hooser unloaded the wheat out of said granary and hauled it to Graham, and sold it to Mr. Bailey. He testified that it was 1932 wheat which he had traded for from Mr. McDaniel. McDaniel testified that he sold Wood some 1932 wheat; that Wood hauled it off, but witness did not know where he put it. Mr. McDaniel testified that a day or two after appellant Wood claimed to have hauled the wheat down to Graham, that he, witness, was over at the place from which witness claimed to have gotten the wheat; that he looked into the middle granary and saw no signs of any wheat having been there for some time.

We do not think the seeming discrepancy between the testimony of certain witnesses as to whether the front or rear truck tracks, observed near the granary, were Silvertown or National tires, would make any difference. The facts showed that the two appellants were up in the neighborhood of the granary from which Mr. Hall's wheat was taken, one day. The next day the load of wheat was gone. It was new wheat, 1933 wheat. That same day appellants sold a load of wheat in Graham to Mr. Bailey. It was new wheat, 1933 wheat. Appellants admitted hauling wheat and selling it to Bailey, but claimed it was 1932 wheat. Conflicts in the testimony are for the jury. We think there was testimony before them to justify their conclusion.

The motion for rehearing will be overruled.

*Overruled.*